STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2025 CA 0480

PROFESSOR KEN M. LEVY

VERSUS

BOARD OF SUPERVISORS OF LOUISIANA STATE
UNIVERSITY AND A&M COLLEGE

Judgment Rendered: _____**NOV 0 7 2025**_____

* * * * *

On Appeal from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
Trial Court No. 758,368

The Honorable Tarvald A. Smith, Judge Presiding

* * * * *

Bruce Hamilton
New Orleans, Louisiana

Attorneys for Plaintiff-Appellee,
Professor Ken M. Levy

Jimmy R. Faircloth, Jr.
Mary Katherine Price
Alexandria, Louisiana

Attorneys for Defendant-Appellant,
Board of Supervisors of Louisiana
State University and A&M College

* * * * *

BEFORE: LANIER, WOLFE, AND HESTER, JJ.

**WOLFE, J.**

The Board of Supervisors of Louisiana State University and A&M College ("LSU") seeks reversal of a preliminary injunction in favor of Professor Ken M. Levy ("Prof. Levy"). The preliminary injunction prohibited LSU from: (1) interfering with or suspending the employment of Prof. Levy; (2) taking any tangible employment action that would infringe on Prof. Levy's constitutional rights to free speech and due process; and (3) retaliating against Prof. Levy's protected right to academic freedom. LSU also seeks reversal of the trial court's interlocutory ruling concerning the denial of LSU's dilatory exception raising the objection of prematurity, which was re-urged in defense of the merits on the injunctive relief. After review, we reverse the trial court's ruling on the exception of prematurity, we vacate the preliminary injunction, and we dismiss Prof. Levy's claims against LSU as premature.

## BACKGROUND

Prof. Levy is employed by LSU as a full-time, tenured professor of law at Paul M. Hebert School of Law in Baton Rouge, Louisiana ("LSU's law school"). On January 17, 2025, Prof. Levy was notified by an emailed letter that he was immediately suspended and relieved of his teaching responsibilities pending an investigation into an anonymous student complaint of inappropriate, vulgar, and threatening statements that he allegedly made in one of his classes on the first day of the 2025 spring semester.[1] Prof. Levy's suspension was with full pay, and it did not affect his tenure. Prof. Levy was also notified that he would be contacted regarding the investigation and would be "allowed an opportunity to respond to the allegations."

---

[1] It is undisputed that the date of the correspondence from LSU's Office of Human Resources was meant to be January 17, 2025, but was mistakenly dated January 17, 2024.

2

The decision to suspend Prof. Levy from the classroom was ultimately made by LSU President William Tate, after confirming the validity of the anonymous complaint through LSU Provost Roy Haggerty and LSU law school's Dean Alena Allen, who had met with Prof. Levy regarding the complaint. Because Prof. Levy admitted to Dean Allen that he had made some, but not all of the statements, Dean Allen met with three students who were in Prof. Levy's class and had personally heard the statements. Unbeknownst to Prof. Levy, his statements in the classroom were secretly recorded by a student. The audio recording and transcript of the recording confirmed the anonymous complaint as well as the students' statements as reported to Dean Allen. Essentially, the complaint was that Prof. Levy had warned/threatened the students with jail if they recorded him and that he told the students that they needed to hear his political views/commentary, which were peppered with harsh profanity directed at the President of the United States and the Governor of Louisiana.

LSU's full investigation into Prof. Levy's classroom comments came to an abrupt halt when Prof. Levy filed a petition for a temporary restraining order ("TRO") and injunctive relief against LSU on January 28, 2025, where he sought to be immediately reinstated to his teaching duties. Prof. Levy also sought to enjoin LSU from interfering with his employment, infringing on his constitutional rights to free speech and due process of law, and retaliating against him on account of his protected academic freedom. The TRO was entered *ex parte* by the trial court on January 30, 2025, immediately reinstating Prof. Levy to his teaching responsibilities and setting the hearing on the preliminary injunction for February 10, 2025. LSU moved to stay or dissolve the TRO, but the trial court denied that motion. LSU then applied for an emergency supervisory writ of review, and on February 4, 2025, this court, by unanimous decision, vacated the part of the TRO that ordered the immediate reinstatement of Prof. Levy to his teaching responsibilities. This court

3

reasoned that a TRO, "when in mandatory form ... may not issue without a full evidentiary hearing." See **Levy v. Board of Supervisors of Louisiana State University and A&M College**, 2025-0125 (La. App. 1st Cir. 2/4/25), 2025 WL 432953, *1 (unpublished writ action). This court did not disturb the trial court's hearing date on the preliminary injunction at that time.

On February 7, 2025, along with its opposition to Prof. Levy's petition for a TRO and injunctive relief, LSU filed dilatory exceptions based on prematurity and the unauthorized use of a summary proceeding to obtain a mandatory preliminary injunction. Prof. Levy opposed both exceptions. The trial court heard arguments concerning LSU's exceptions on February 10, 2025, prior to taking up the hearing on Prof. Levy's request for injunctive relief. The trial court denied both exceptions in open court and signed a judgment to that effect on February 18, 2025.

After a two-day hearing on the merits of Prof. Levy's request for injunctive relief, the trial court granted Prof. Levy a preliminary injunction, essentially adopting the language of the previously vacated TRO. The mandatory preliminary injunction ordered LSU to immediately reinstate Prof. Levy to his "position and teaching responsibilities," and prohibited LSU from interfering with, suspending, or taking any tangible employment action against Prof. Levy "on account of his expressions afforded protection," or infringing upon his rights to free speech and due process of law, or retaliating against him on account of his protected academic freedom. That judgment was signed by the trial court on February 27, 2025.

The day after the hearing on the preliminary injunction concluded, LSU sought another emergency supervisory writ with this court. The writ application was narrowly tailored to the mandatory preliminary injunction ordering Prof. Levy's immediate return to the classroom. On February 20, 2025, this court again unanimously reversed the mandatory preliminary injunction as improper and granted LSU's previously denied exception of unauthorized use of a summary proceeding.

4

Accordingly, this court reversed that portion of the trial court's ruling that ordered LSU to immediately reinstate Prof. Levy to his position and teaching responsibilities. See **Levy v. Board of Supervisors of Louisiana State University and A&M College**, 2025-0168 (La. App. 1st Cir. 2/20/25), 2025 WL 562606, *1 (unpublished writ action). Thereafter, the Louisiana Supreme Court denied Prof. Levy's writ application concerning this court's ruling. **Levy v. Board of Supervisors of Louisiana State University and A&M College**, 2025-00280 (La. 5/20/25), 409 So.3d 223.

LSU's timely appeal of the trial court's February 27, 2025 judgment concerns the only remaining issue of the preliminary injunction that effectively prohibits LSU from completing its investigation of Prof. Levy's actions in the classroom and taking further administrative action if warranted. LSU includes in this appeal a challenge to the trial court's denial of its dilatory exception of prematurity, arguing that Prof. Levy was merely placed on paid administrative leave pending an investigation into his alleged misconduct, and therefore, the granting of prohibitive injunctive relief was improper. Simply put, LSU maintains that Prof. Levy has no constitutional claim unless and until he is denied due process in connection with the termination of his employment and/or tenure. In support of this argument, LSU cites a recent case issued by this court, **Enwefa v. Board of Supervisors of Southern University and A & M College**, 2024-1029, (La. App. 1st Cir. 3/14/25), 410 So.3d 992. Because we agree with LSU that **Enwefa** controls our decision in this matter, we begin our analysis with a discussion about the exception of prematurity and how it relates to the procedural posture at this time.[2]

---

[2] LSU's exception is properly reviewable as part of this appeal of the preliminary injunction judgment because it was urged by LSU in defense of the merits on the injunctive relief and the ruling on the exception directly relates to the trial court's ruling on the injunctive relief. See **Maqubool v. Sewerage & Water Board of New Orleans**, 2018-0572 (La. App. 4th Cir. 11/14/18), 259 So.3d 630, 633. Generally, when an unrestricted appeal is taken from a final judgment determinative of the merits, the appellant is entitled to seek review of all adverse and prejudicial interlocutory judgments involving the same or related issues in addition to the review

## LAW AND ANALYSIS

The dilatory exception of prematurity questions whether a cause of action has matured to the point where it is ripe for judicial determination. See La. Code Civ. P. art. 926(A)(1); **Enwefa**, 410 So.3d at 995. Courts require that cases submitted for adjudication be justiciable, ripe for decision, and not brought prematurely. **Prator v. Caddo Parish**, 2004-0794 (La. 12/1/04), 888 So.2d 812, 815-816. A claim is not ripe for adjudication if it depends on contingent future events that may or may not occur as anticipated or even at all. **Louisiana Federation of Teachers v. State**, 2011-2226 (La. 7/2/12), 94 So.3d 760, 764. Prematurity is determined by the facts existing at the time the lawsuit is filed. **Enwefa**, 410 So.3d at 996.

When an appellate court reviews a ruling on an exception of prematurity, we may look to the evidence offered at the hearing as well as the allegations of the petition. **Doe v. Banks**, 2023-0914 (La. App. 1st Cir. 3/13/24), 385 So.3d 706, 710. The facts are undisputed that Prof. Levy is on paid, as opposed to unpaid, administrative leave. Furthermore, Prof. Levy does not dispute the fact that he made some of the comments that led to LSU's action of removing him from the classroom pending an investigation. Thus, the trial court made its ruling denying LSU's exception based on purely legal questions interpreting Prof. Levy's constitutional protections as a tenured professor. A purely legal question is reviewed by this court *de novo*. See **N'Dakpri v. Louisiana State Board of Cosmetology**, 2023-1213 (La. App. 1st Cir. 6/21/24), 392 So.3d 407, 415, writ denied, 2024-00932 (La. 11/6/24), 395 So.3d 1176.

---

of the final judgment. See **Pontchartrain Natural Gas System v. Texas Brine Company, LLC**, 2018-1249 (La. App. 1st Cir. 12/30/20), 317 So.3d 715, 742, writs denied, 2021-00382, 2012-00386 (La. 6/8/21), 317 So.3d 323.

Tenured professors possess a property interest in their employment that requires due process protection under both the federal and state constitutions.[3] **Jackson v. Board of Supervisors for Southern University and Agricultural and Mechanical College**, 2021-0241 (La. App. 1st Cir. 3/11/22), 372 So.3d 336, 347. It is undisputed that Prof. Levy has not been fired, nor has his tenure been revoked. Prof. Levy argues that he was not notified of any policy violation before he was punitively removed from his teaching responsibilities, which he describes as an "adverse employment action in retaliation for protected political speech, without due process of law." However, the undisputed facts reveal that Prof. Levy knew of the anonymous student complaint about his inappropriate remarks in the classroom when he met with Dean Allen before he received the suspension letter from LSU's Office of Human Resources. Furthermore, the suspension letter "serve[d] as notice" that Prof. Levy was being immediately removed from his teaching responsibilities, "pending an investigation into student complaints of inappropriate statements made in [his] class during the first week of the Spring Semester 2025." Prof. Levy was also notified that he would be contacted during the investigation and be given an opportunity to respond to the allegations.

As did the plaintiffs in **Enwefa**, Prof. Levy asserts that LSU's suspension letter was insufficient to satisfy the due process notice requirement. However, this court found it was premature to address this argument considering that no tenure had been revoked. **Enwefa**, 410 So.3d at 996 n.4. When a violation of due process is shown, a court may issue a prohibitory preliminary injunction to enjoin the constitutional violation. **Id.** at 996. Here, as in **Enwefa**, there has been no violation

---

[3] The Fourteenth Amendment to the United States Constitution prohibits a state from depriving a person "of life, liberty, or property, without due process of law." Article 1, § 2 of the Louisiana Constitution provides the same protection. Federal jurisprudence is relevant in determining the nature and extent of state due process protection. **Jackson v. Board of Supervisors for Southern University and Agricultural and Mechanical College**, 2021-0241 (La. App. 1st Cir. 3/11/22), 372 So.3d 336, 347.

of Prof. Levy's constitutional right to due process. It is well established that placement on paid administrative leave does not constitute deprivation of a property interest. **Id**. at 997 (citing several federal cases).

Prof. Levy also argues that LSU's policies and procedures did not allow LSU to place him on paid administrative leave or remove him from teaching in the classroom. We note, however, that LSU President Tate testified that he had authority to make the decision to suspend Prof. Levy from the classroom pending further investigation into the matter, and that he was authorized by LSU's Board of Supervisors to "take action deemed in the best interest of the University." Additionally, the requirements of due process are not violated simply by failing to comply with internal rules or policies of the university. **Enwefa**, 410 So.3d at 997. Placing Prof. Levy on paid administrative leave pending an investigation did not violate his due process rights just because the faculty policies and procedures are silent on the issue. See **Enwefa**, 410 So.3d at 997 n.5. Therefore, in the current posture of this case, there is no deprivation to be enjoined. **Id**. at 997. Prof. Levy's petition is premature.

We conclude that the trial court improperly denied LSU's exception of prematurity because Prof. Levy's tenure and employment are still intact. For a constitutional deprivation to occur, LSU must terminate Prof. Levy's tenure and employment without satisfying all due process requirements – two prerequisities that may not ever come to fruition in this case. See **Enwefa**, 410 So.3d at 998. Prof. Levy's removal from the classroom was an interim decision made by LSU President Tate that did not disturb Prof. Levy's tenure rights, employment, or pay. Prof. Levy will be provided notice and an opportunity to be heard upon completion of LSU's "full-blown investigation."

Given our decision that Prof. Levy's petition is premature, we also conclude that the trial court erred in granting a prohibitory preliminary injunction enjoining

LSU from taking any tangible employment action – such as investigating the complaint of inappropriate comments made by Prof. Levy. The preliminary injunction is also premature. Accordingly, Prof. Levy's claims must be dismissed without prejudice as premature, and the preliminary injunction must be vacated.

## CONCLUSION

We vacate the February 27, 2025 judgment of the trial court that granted Professor Ken M. Levy's request that a preliminary injunction be issued against the Board of Supervisors of Louisiana State University and A&M College. We also reverse the trial court's February 18, 2025 judgment denying the exception of prematurity filed on behalf of the Board of Supervisors of Louisiana State University and A&M College. Professor Ken M. Levy's claims against the Board of Supervisors of Louisiana State University and A&M College are hereby dismissed without prejudice. All costs of this appeal are assessed against Professor Ken M. Levy.

**VACATED IN PART; REVERSED IN PART; AND RENDERED.**

9